## WATSON v. STATE.

No. A-11389. May 2, 1951.

(231 P. 2d 380.)

Archibald Bonds, Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, P. J. Plaintiff in error Clarence Watson, defendant below, was charged by information in the district court of Haskell county, Oklahoma, with the crime of assault with intent to kill Vernon Davis, after prior conviction of a felony, to wit, murder. The crime was alleged to have been committed in McCurtain, Oklahoma, on June 23, 1948. The defendant was tried by a jury, convicted, his punishment fixed at 10 years in the penitentiary, and judgment and sentence entered accordingly. From the judgment and sentence so entered, this appeal has been perfected.

The record reveals that on the day of the crime the defendant related to Howard McCollom that Davis was supposed to have taken him to Muskogee that morning in Davis' car so that Watson could have collected some money. He said that Watson complained that Davis ran off and left him. McCollom further testified that Watson said "when he comes back from Muskogee, he was going over there and cut his guts out with a knife". The foregoing statement was made about 15 or 20 minutes before the crime was committed. The state's case further shows that the defendant Watson went to Novak's grocery store where Mrs. Davis worked and there found Vernon Davis. Davis testified, as did his wife, that the defendant came beside him in the grocery store and said "why did you tell me

that god dam lie", or according to Mr. Novak, "why did you tell me that". Thereupon Watson struck Davis without warning in the bowels with a knife which he held in his hand; resulting, according to medical proof, in a wound about 10 inches long and perforating his bowels in numerous places and exposing his entrails so that he was compelled to hold them in the wound to keep them from falling out. The record shows that the defendant then made a menacing gesture with the knife toward Mr. Novak when he said "don't do that, Bud". Davis after being stabbed ran out the front door and Mrs. Davis tried to follow him. Watson blocked the way and said "get back, god dam you, and I mean get back". At that time Watson still had the knife in his hand. The record further shows that Watson went down the street and tried to give the knife to another person who refused it, and he then threw the same away. The record further shows that Davis was confined in the hospital for 13 days and unable to work for about 6 weeks thereafter. Watson's defense was a denial of the state's proof and was to the effect that he had lost his billfold and had been informed by a man by the name of Allen whom he was unable to locate, that Vernon Davis had taken it from his hip pocket. Watson contended his billfold contained $55. He testified that it was his intention to retrieve his billfold and not to kill Davis when he stabbed Davis. When he spoke to Davis about the billfold and the $55 he said Davis used some vile language toward him. In this he was not corroborated by Mr. Novak. He testified on rebuttal that there was no such conversation. Mrs. Davis also denied there was any such conversation.

There were other witnesses who testified in a manner in support of the various phases of the state's case. Only the defendant, Davis, Mrs. Davis and Mr. Novak were at the scene of the crime and heard and saw what took place. Dr. E. M. Woodson testified that the wound was such that could have easily produced death. He was compelled he said to tie numerous small arteries and to close the intestines in numerous places, as well as closing the abdomen.

The defendant contends that the court should have sustained his demurrer to the evidence and give his request for an instructed verdict of not guilty. We do not find either the demurrer or the request in the record, but even if such were true, under the record, the question of intent to kill was for the jury. The evidence is entirely sufficient to support the finding of guilty of assault with intent to kill. Under the provisions of Title 21, § 653, O. S. A. 1941, the maximum penalty for assault with intent to kill in the manner herein involved is five years. Under the provisions of Title 21, § 51, O. S. A. 1941, in relation to a second offense after conviction of an offense punishable by imprisonment in the penitentiary, it is provided:

"If such subsequent offense is such that, upon a first conviction the offender would be punishable by imprisonment in the penitentiary for five years, or any less term, then the person convicted of such subsequent offense is punishable by imprisonment in the penitentiary for a term not exceeding ten years."

Hence the jury's verdict is not in excess of that provided by law for assault with intent to kill for a second or subsequent offense following a conviction punishable by imprisonment in the penitentiary.

We have examined the court's instructions and find them to be clear and fair. They cover not only assault with intent to kill but assault with a dangerous weapon and also the crime of assault and battery. The defendant could not therefore complain in regard to the court's instructions. The information being sufficient, the evidence being ample and the court's instructions being fair and clear and the verdict not being in excess of that provided by law under the charge as laid in the information, the judgment and sentence is accordingly affirmed.

JONES and POWELL, JJ., concur.